IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PATTIE L. CATRON,                    ]
                                     ]
       Plaintiff,                    ]
                                     ]
 v.                                  ]   No. 2:15-CV-
                                     ]
EASTMAN CHEMICAL COMPANY,            ]
                                     ]
       Defendant.                    ]

**COMPLAINT**

Plaintiff Pattie L. Catron files her claims for age discrimination, sex discrimination, hostile work environment, and retaliation in employment against the defendant and avers:

1. The federal question jurisdiction provisions of *28 U.S.C. §1331* empower this Court to adjudicate the plaintiff's federal employment discrimination and retaliation claims. The plaintiff's age discrimination claims, hostile work environment claims, and retaliation claims are premised upon the provisions of the Age Discrimination in Employment Act (ADEA), codified at *29 U.S.C. §623* and *§626*. The plaintiff's sex discrimination claims, hostile work environment claims,

1

and retaliation claims are premised upon the provisions of *42 U.S.C. §2000e-2, §2000e-3, and §2000e-5,* and *42 U.S.C. §1981a.*

2. Plaintiff Catron is a white female 60-years-of-age. She resides in Sullivan County, Tennessee. At the times pertinent to her claims of age discrimination, sex discrimination, hostile work environment, and retaliation, the plaintiff was employed by Eastman Chemical Company as an Administrative Assistant to the Director of Additives and Functional Products Department. Prior to her employment at Eastman Ms. Catron worked for sixteen years at King Pharmaceutical in Bristol, Tennessee first as a business support assistant, then as Administrative Assistant to the CEO, and then as Executive Administrative Assistant to the Executive Vice President.

3. Eastman Chemical Company is a Delaware corporation which maintains a principal office and chemical manufacturing plant in Kingsport, Tennessee. Eastman employs thousands of individuals. Its address is 200 S. Wilcox Drive, Kingsport, TN 37660-5147. The defendant is an employer within the scope of the Age Discrimination In Employment Act and Title VII of the 1964 Civil Rights Act. The defendant's registered agent is listed as Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

4. From August 2012 until her discriminatory discharge in September 2013, Ms. Catron reported to Mr. Brendan Boyd, the Director of Eastman's

Additives and Functional Products Department. Boyd managed dozens of division group leaders amd seventy employees in various locations who promoted and sold Eastman products in England and China. He frequently flew overseas and also hosted conferences for additive customers in Kingsport.

5. The plaintiff's Executive Assistant duties included managing Director Boyd's schedule, arranging meetings and luncheons for him and other division staff, keeping time records for seventy employees, making overseas travel arrangements, including car rentals and hotel reservations, preparing various reports each week and month, checking requisitions and purchase order, keeping spreadsheets, tracking division expense statements, preparing sales and product information slides for meetings, obtaining visa for international travel, updating divisional intranet sites, performing miscellaneous accounting and product ordering functions, and communicating maintenance needs to appropriate staff. Ms. Catron performed her job duties satisfactorily.

6. During April and May 2013, Boyd became openly hostile toward the plaintiff because of her age. He began screaming at her in a loud voice and pounding his desk in her presence in an effort to intimidate her and to create a hostile work environment. As the weeks passed, Boyd waved his arms about and become wild eyed while he screamed at Ms. Catron. He slammed his fist on his desk and told Ms. Catron that he could fire her at anytime.

7. Boyd's frequent and hostile tantrums made the plaintiff a nervous wreck. When she began to cry after one of Boyd's screaming tantrums, Boyd rolled his eyes and said that her reaction "just crawled up" his spine. As part of the increasing hostile work environment, Boyd began excluding Ms. Catron from company dinners for guests which other department assistants attended. Boyd insulted Ms. Catron by telling her that he thought she was "smarter than this" when he hired her.

8. Boyd's increasing hostility and belligerence caused the plaintiff to experience additional stress and anxiety. On June 26, 2013, plaintiff Catron told Boyd that he was creating a hostile work environment which kept her upset every day and made her cry at home every night. The plaintiff informed Boyd that she felt like she was having a nervous breakdown. Ms. Catron told Boyd that she did not want to lose her job. When Ms. Catron asked if she could search for other positions within Eastman, Boyd replied "not at this time."

9. As part of his age discrimination, sex discrimination, and hostile work environment, Boyd told Ms. Catron that he found mistakes in her work all the time and he didn't trust her to do her work. Boyd began issuing confusing directions to the plaintiff.

10. On August 9, 2013, the plaintiff had to stay all night with her husband Frank in the Holston Valley Medical Center Cardiac Care Unit. After her

husband underwent his heart catheterization, Ms. Catron came into work. She stayed at work late to complete the Weekly Highlights for Boyd.

11. On September 9, 2013, Ms. Catron asked Boyd for vacation time and reminded him that she had requested September 16-20 in an August e-mail. Ms. Catron had not taken any vacation time during the year while everyone else in the division had. Boyd told the plaintiff she could not take vacation and announced there was a conference at the Meadowview Convention Center that week. Ms. Catron reminded Mr. Boyd that she had already taken care of all the guests' travel arrangements and meeting schedules. As was the practice in the department, a co-worker was planning on filling in for Ms. Catron. Boyd threw a document at the plaintiff, told her there was a mistake in it, and ordered her to change it.

12. Boyd then announced that she was not as good as the two other younger female assistants. With a mean look in his eyes, Boyd added that Ms. Catron had made a "bad judgment," that she should go ahead with her vacation, and that he would do her yearly evaluation when she returned. Ms. Catron asked again if she could look for other positions within the company. Boyd replied: "No," and that he would talk to "Ashley" first. Ms. Catron went to her desk and cried.

13. Plaintiff Catron avers that Boyd's treatment of her was

deliberately discriminatory, was deliberately insulting, embarrassing, and threatening, made it difficult for her to perform her job duties, and was intended to, and did, cause her emotional and mental distress. The plaintiff avers that Boyd and defendant Eastman deliberately created a hostile work environment because she was an older woman.

14. Ms. Catron contacted Ms. Ashley Angles in Eastman's Human Resources Department later in the day of September 9, 2013. The plaintiff explained how Boyd raged at her and hit the desk when he became angry with her. The plaintiff told Ms. Angles about Boyd's "younger assistants being better" comments. Ms. Catron insisted to Ms. Angles that she was afraid of Boyd and wanted to be moved to another position. Ms. Catron told Ms. Angles that Boyd was discriminating against her and was creating a hostile work environment.

15. Ms. Angles advised the plaintiff that Boyd's actions and comments had "crossed the line" and that there would be no retaliation for her complaining. Ms. Angles told the plaintiff to take her requested vacation while she investigated her complaint.

16. After the plaintiff went home, Ms. Angles telephoned the plaintiff and told her she could return to work the next day and there would be no retaliation. The plaintiff remained anxious all night. However, Boyd did not yell at or insult the plaintiff the remainder of the week. Ms. Catron then took her

prearranged vacation from September 16 through September 20, 2013.

17. Ms. Catron returned to work on September 23, 2013. HR Representative Ashley Angles told Ms. Catron the next day that there was nothing she was going to do about the plaintiff's complaint and that her employment was upt to Boyd.

18. On September 25, 2013, Brendan Boyd walked Ms. Catron to the Eastman Human Resources Office. Supervisor Steve Crawford and HR Manager Tyra Copas were present. Boyd told the plaintiff she was being discharged because she had booked a taxi ride to the airport for him at the wrong time when he was on vacation the year before. Even though the time for the booked taxi time was on Mr. Boyd's cell phone for him to see, Boyd was irritated that his wife had to drive him to the airport at the time. There was no reasonable basis for his criticism or for using that months-old incident as a pretext to discharge the plaintiff.

19. Boyd then criticized Ms. Catron for leaving a meeting scheduled with a vacationing staff member on his agenda for September 11, 2013. Ms. Catron had updated Boyd's calendar the Monday afternoon before and had deleted the meeting from his agenda. There was no reasonable basis for Boyd's complaint or for using the non-event as a pretext to discharge the plaintiff.

20. Boyd also claimed that "a couple of group leaders" had remarked

that the plaintiff "asked too many questions." Ms. Catron did have to make some inquiries when she arranged various meetings and conferences for Boyd and the group leaders in order to be certain that she had taken care of all contingencies. No group leader ever indicated to her that she had asked too many questions. There was no reasonable basis for the defendant's using that unsupported accusation as a pretext to discharge the plaintiff.

21. Plaintiff Catron avers that the three reasons Boyd and Eastman gave for discharging her were pretextual and were generated to cover up Eastman's age discrimination, sex discrimination, hostile work environment, and retaliation against her. Other younger executive assistants occasionally made mistakes but were not belittled, insulted, bullied, or discharged.

22. HR Manager Tyra Copas told Ms. Catron as she walked her to her automobile that she had been a good employee and could apply for other positions at Eastman. The plaintiff had previously asked Boyd for permission to transfer to another department. Boyd had discriminatorily refused to allow her to transfer.

23. Plaintiff Catron avers that she was discriminated against because of her age and her sex and was retaliatorily discharged because she complained about the age discrimination and hostile work environment to the defendant's Human Resources Department. As described above, Boyd openly bullied and insulted the plaintiff and accused her of not being as competent as younger

assistants because he knew the plaintiff was an older woman who would not react in a confrontational manner to his insults and verbal tirades as a younger male employee would. Boyd verbally belittled and insulted Ms. Catron because she is an older woman.

24. Shortly after the plaintiff complained to Eastman's Human Resources Department that Boyd was discriminating against her, had told her she was not as good as the younger assistants, had consistently insulted and bullied her, and had created an openly hostile work environment for her, the defendant discharged her for pretextual reasons. The plaintiff avers that the discharge was in obvious retaliation for her complaining about the hostile work environment and age and sex discrimination. Ms. Catron was discharged two weeks after she had complained about Boyd's discriminatory age remarks and hostile work environment to the defendant's Human Resources representative.

25. The defendant's hostile work environment, age discrimination, sex discrimination, and immediate employment retaliation was deliberate, willful, malicious, in bad faith, and in reckless disregard of the plaintiff's federally protected rights. As a result of the defendant's employment discrimination and retaliation, Ms. Catron has suffered emotional distress and anxiety. She has lost wages and employment benefits. She will continue to lose wages and benefits in the future.

9
Case 2:15-cv-00169-TWP-MCLC   Document 1   Filed 06/18/15   Page 9 of 14   PageID #: 9

26. The defendant has established and maintained company policies which mirror the anti-discrimination and anti-retaliation provisions of the ADEA and Title VII and prohibit its supervisors and managers from committing age discrimination and sex discrimination against employees, from creating and maintaining illegal hostile work environments, and from retaliating against any employee because he/she complains about age discrimination or sex discrimination or a hostile work environments. The defendant's supervisors and managing agents who discriminated against Ms. Catron, created the hostile work environment, and retaliated against her by discharging her were aware of the defendant's anti-discrimination and anti-retaliation policies and willfully and recklessly violated those policies, as well as the ADEA and Title VII.

27. In an effort to cover up its employment discrimination and retaliation in its Position Statement to the EEOC, Eastman accused Ms. Catron of being incompetent and unable to perform her job duties. Eastman's series of accusations included an incident caused by supervisor Boyd's failing to advise Ms. Catron that he used undisclosed accounting formula when he prepared the departmental budget spreadsheets. Boyd did not insist at the time that Ms. Catron's and another assistant's inability to initially decipher his manipulation of the budge spreadsheets was Ms. Catron's fault.

28. Boyd and Eastman are now blaming Ms. Catron for Boyd's

having to drive to Knoxville to take a flight out of state when the tarmac at the Tri-Cities Airport was being repaired. Ms. Catron made the appropriate arrangements for Boyd's return flight to Knoxville so he could pick up his automobile. Boyd did not insist that the unavoidable change in circumstances was Ms. Catron's "fault" at the time.

29. Boyd and Eastman are now blaming Ms. Catron for scheduling meetings with other managers and supervisors at times and places which Boyd approved in the first place. Boyd and Eastman also claim that Ms. Catron's scheduling errors forced Boyd to rush between meetings at different locations within Eastman. But at the time the meetings were scheduled, Boyd directed the scheduling and approved each meeting's time and location. When Ms. Catron asked Boyd if he had enough time to get from one meeting to the next and offered to reschedule them, Boyd stated that he would just leave the first meeting "early."

30. Boyd and Eastman did not disclose to the EEOC that Boyd routinely required Ms. Catron to perform onerous weekly report compilations which Boyd had been performing before Ms. Catron began working for him and thereby added to her regular hearvy workload. Boyd and Eastman did not disclose to the EEOC that after discharging Ms. Catron, Boyd assigned several of the plaintiff's former job responsibilities and duties to other executive assistants or performed them himself so that Ms. Catron's replacement would not be

"overwhelmed."

31. In an effort to avoid the appearance of age and sex discrimination, Eastman replaced Ms. Catron with a lady in her same age group who had worked for Eastman for 25 years and was losing her current job. However, Eastman and Boyd had to significantly reduce and lighten the replacement's job duties in order to keep her employed as Boyd's new executive assistant. Eastman did not reveal to the EEOC that several weeks after it discharged Ms. Catron it transferred the HR representative who had initially told her that Boyd had "crossed the line" to another division.

32. All of the defendant's accusations of poor performance are pretextual and are fabricated or exaggerated. During her employment, Ms. Catron received numerous compliments from various group leaders and employees regarding different aspects of her work performance which Eastman is now criticizing.

33. As a result of the defendant's discrimination and retaliation, the plaintiff's earning capacity has been impaired and her enjoyment of life has been diminished. The plaintiff is entitled to recover awards of compensatory damages and punitive damages from the defendant for its violations of Title VII. The plaintiff is entitled to recover money damages for lost wages and lost benefits under both Title VII and the ADEA. She is entitled to recover liquidated damages

under the Age Discrimination in Employment Act. The plaintiff is entitled to reinstatement to her former position or to an award of front pay.

34. Plaintiff Catron filed charges of age discrimination, hostile work environment, sex discrimination, and retaliation against the defendant with the EEOC. She has received her right-to-sue letter and has exhausted her administrative remedies.

WHEREFORE, the plaintiff demands;

1. Judgment against the defendant for all compensatory damages allowed her by Title VII and *42 U.S.C. §1981a.*

2. Judgment against the defendant for all punitive damages allowed her by Title VII and *42 U.S.C. §1981a*.

3. Judgment against the defendant for all money damages allowed her by the ADEA.

4. Judgment against the defendant for liquidated damages allowed her by the ADEA.

5. An award of lost wages and lost employment benefits under Title VI and the ADEA.

6. Reinstatement to her former position, or alternately, an award of front pay.

7. An award of attorney's fees as the prevailing party.

8. A jury to try her claims.

                        s/ Charlton R. DeVault, Jr.
                        CHARLTON R. DEVAULT, JR.
                        BPR #000428
                        102 Broad Street
                        Kingsport, Tennessee 37660
                        (423) 246-3601

                        ATTORNEY FOR THE PLAINTIFF